United States District Court
Southern District of Texas
**ENTERED**
July 27, 2023
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN CLEMONS, a/k/a JOHN HENRY CLEMMONS, III, TDCJ # 00719888, § § § | | |
| Plaintiff, § | | |
| § | | |
| VS. § | CIVIL ACTION NO. 4:21-4052 | |
| § | | |
| BOBBY LUMPKIN, *et al.*, § § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Clemons, a/k/a John Henry Clemmons III, is an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ). Clemons proceeds *pro se* and *in forma pauperis* in this civil rights case. The defendants have filed a motion to dismiss all claims against them (Dkt. 11), and the plaintiff filed a response (Dkt. 17). The motion is ripe for decision. Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, the defendants' motion to dismiss will be **GRANTED.** The plaintiff's motion to amend his complaint (Dkt. 18) will be **DENIED** and his motion to dismiss one defendant in his individual capacity (Dkt. 19) will be **GRANTED**. The Court's reasons are explained below.

### I.    BACKGROUND

Clemons alleges that a TDCJ board policy entitled Uniform Inmate Correspondence Rules (BP-03.91), which was amended by the Texas Board of Criminal Justice in 2021, contains an overly broad definition of "sexually explicit images" and caused his property

to be improperly confiscated. He sues Bobby Lumpkin, director of TDCJ, and nine members of the Texas Board of Criminal Justice for their roles in amending BP-03.91. He also sues three defendants at the Wynne Unit, where he is incarcerated: Warden Rocky Moore; Miriam Gitau, a property officer; and Joseph Kuguma, a correctional officer (Dkt. 1).[1]

The defendants have submitted a copy of BP-03.91 (Dkt. 11-1), which is also available on TDCJ's public website.[2] The policy provides that general correspondence and publications sent to inmates are subject to inspection by TDCJ officials, and authorizes officials to reject correspondence or publications for certain content, including sexually explicit images (Dkt. 11-1, at 12-14). It defines a "sexually explicit image" as an image which either "depicts sexual behavior," "is intended to cause sexual excitement or arousal," or shows the following:

> [F]rontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point.

(*id.* at 5). Clemons states that this definition of sexually explicit images, which was amended in 2021, is broader than the definition in earlier versions of BP-03.91.

---

[1] Clemons filed a previous suit challenging the amended version of BP-03.91. *See Clemons v. TDCJ*, Civil Action No. 4:21-2475 (S.D. Tex.). On August 27, 2021, the Court dismissed the suit without prejudice because Clemons had filed only a motion for preliminary injunctive relief and had not filed a civil complaint.

[2] *See* Uniform Inmate Correspondence Rules, BP-03.91 (rev. 5) (June 25, 2021), available at https://www.tdcj.texas.gov/documents/policy/BP0391.pdf (last visited July 25, 2023).

On November 4, 2021, shortly after the amended policy took effect, Officer Kuguma confiscated approximately 500 photos and three magazines from Clemons on the grounds that the confiscated items contained sexually explicit images. He also wrote a disciplinary case against Clemons. Clemons alleges that Kuguma was acting at the direction of Gitau (Dkt. 1, at 6-7). He argues that, because the confiscated materials had been approved by TDCJ at the time he obtained them under the former policy, he possessed them in accordance with TDCJ rules and the confiscation was improper (Dkt. 17, at 14-15). He also argues that BP-03.91 prohibits images that are not actually explicit.[3]

After a disciplinary hearing, Clemons was convicted of possession of contraband, in particular, sexually explicit images. *See* Dkt. 6, at 13 (disciplinary case record, submitted by Clemons as Exhibit L to his prior request for injunctive relief, reflects his conviction and punishment, in particular, loss of 10 recreation days and 10 commissary days). Clemons claims that, despite the provision in the policy for case-by-case review of publications, the hearing officer did not adequately review the material confiscated from him (Dkt. 1 ,at 7). He maintains that "[s]ome of the photos were not showing any sexual content" and that "about 95% of the photos that were sexual in nature did not cross the threshold that would designate them as sexually explicit" (*id.*).

In this lawsuit, Clemons claims that BP-03.91's definition of sexually explicit

---

[3] In his prior filing seeking a preliminary injunction, Clemons submitted multiple photographs including images of "lingerie, thongs, bikinis, and sex toys" that Clemons describes as "not sexually explicit in and of themselves" but subject to confiscation under the amended policy (Dkt. 6, at 4-5; *see id.* (Exhibits A-J)). The Court denied injunctive relief on August 25, 2022 (Dkt. 9).

images, as amended in 2021, is overly broad and violates his First Amendment rights.[4] He also claims that officials did not comport with applicable due process standards when confiscating his property. He asks the Court to issue a declaratory judgment and permanently enjoin the BP-03.91's amended definition of sexually explicit images, arguing that the definition is "irreconcilable" with former versions of the policy "and long standing precedent" (Dkt. 1, at 8). He also seeks an order instructing Warden Moore to expunge his disciplinary conviction from his record; compensatory damages of approximately $415-540 for confiscated photos, albums, and magazines; and punitive damages of $10,000 (*id.* at 6, 8; *see* Dkt. 17, at 2).

The defendants seek dismissal of all claims.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim

---

[4] Clemons has submitted materials from Nicholas Taft, another inmate who agrees with Clemons' position. Taft states that he received three novels through TDCJ's mailroom after the amended policy went into effect. *See* Dkt. 20 (Taft declaration); Dkt. 22 (three novels). Taft claims that the novels contain "sexually explicit text that, according to experts, may conjure up images no different than that of an actual image" (Dkt. 20, at 1). After giving examples of sexually explicit text from the novels, he avers that the amended policy is "ambiguous and contradictory" because it allows inmates to receive novels that are "intended to cause sexual excitement or arousal" but prohibits sexually explicit images (*id.* at 2).

showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington*, 563 F.3d at 147 (cleaned up).

The court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the court if the documents are sufficiently referenced in the complaint and no party questions their authenticity (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). The Court may also rely on judicially noticed facts. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### B.     *Pro Se* **Pleadings**

"Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### III.    ANALYSIS

Clemons brings a First Amendment claim challenging BP-03.91, specifically, its definition of sexually explicit images. He also brings a Fourteenth Amendment due process claim regarding his confiscated property. His claims are cognizable under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016).[5] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of BP-03.91 (Dkt. 11-1), which is a matter of public

---

[5] Clemons concedes that he did not exhaust his administrative remedies before filing suit, but claims that prison officials interfered with his ability to pursue his remedies (Dkt. 1 at 4; Dkt. 8, at 2 (motion for leave to amend pleadings regarding grievance proceedings); *see* Dkt. 9 (granting leave to amend)). The defendants do not assert exhaustion, which is an affirmative defense. *See Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007). Therefore, the Court does not address the exhaustion issue.

record and not subject to reasonable dispute. The Court may rely on these judicially noticed facts without converting the motion to dismiss to a motion for summary judgment. *See Funk*, 631 F.3d at 783.

### A. Sovereign Immunity

As a preliminary matter, the Court addresses sovereign immunity for the defendants sued in their official capacity.

A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394. Therefore, to the extent Clemons sues the defendants in their official capacity as state employees, the defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages, and those claims will be dismissed.

### B. First Amendment

Clemons alleges that the defendants violated his First Amendment rights. A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.*

*Procunier*, 417 U.S. 817, 822 (1974). When a prisoner's rights with respect to mail are affected by a prison practice or regulation, "the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest." *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993); *see Thornburgh v. Abbott,* 490 U.S. 401, 413-14 (1989); *Turner v. Safley,* 482 U.S. 78, 89 (1987). The defendants do not carry the burden to show that the policy is rationally related to a legitimate penological goal. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it"). Rather, an inmate bears the burden to prove that the prison's practice or regulation is not reasonably related to, or is an "exaggerated response" to, a legitimate penological objective. *See Prison Legal News v. Livingston*, 683 F.3d 201, 215 (5th Cir. 2012) (citing *Overton*, 539 U.S. at 132; *Turner*, 482 U.S. at 87). Courts must give substantial deference to prison officials' exercise of their professional judgment. *Id.*.

In this case, Clemons alleges that BP-03.91's amended definition of sexually explicit images is overly broad and not reasonably related to legitimate goals such as safety, security, or rehabilitation (Dkt. 5). He also argues that the defendants have not submitted evidence to demonstrate that their departure from the former definition is justified. *See*, *e.g.*, Dkt. 1, at 7 (claiming that the policy bans materials that "have been accepted by TDCJ-CID for decades" and are "sexual in nature, but not crossing the threshold to be designated sexually explicit"); Dkt. 17, at 7 (arguing that the policy bans materials not "traditionally defined as 'sexually explicit'" (citing, *inter alia*, *Cline v. Fox*, 319 F. Supp. 2d 685 (N.D. W. Va. 2004)); *id.* at 9-11 (arguing that the policy improperly bans material that is

"suggestive" but not "explicit"); *id.* at 11 (arguing that TDCJ officials have failed to put forth a reason, such as deviant behavior, that "a wide departure" from the previous policy was necessary). The defendants argue that dismissal is warranted because Clemons has not sufficiently pleaded that BP-03.91 lacks a rational relation to a legitimate penological objective, citing authority holding that "the policy is rationally related to several legitimate penological goals including maintaining discipline and preventing inappropriate sexual behavior" (Dkt. 11, at 7).

The Fifth Circuit has held that prison policies regulating sexually explicit images are reasonably related to legitimate penological interests. *See Thompson v. Patteson,* 985 F.2d 202, 205-06 (5th Cir. 1993) (rejecting a First Amendment challenge to prior Texas procedures for reviewing and limiting access to sexually explicit material in mail or publications sent to inmates) (citing *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978)); *Brewer,* 3 F.3d at 824 (a prison may impose regulations and policies that impinge on a prisoner's First Amendment rights if they are reasonably related to a legitimate penological interest). In 2013, the Fifth Circuit dismissed an appeal in which the inmate argued that prison officials had incorrectly categorized some images as sexually explicit, citing *Thompson* and deeming the appeal frivolous. *Stroble v. Livingston*, 538 F. App'x 479 (5th Cir. 2013). District courts in Texas have repeatedly dismissed First Amendment challenges to BP-03.91 based on this precedent, including several recent challenges to the policy's amended definition of sexually explicit images.[6]

---

[6] *See*, *e.g.*, *Thompson v. Lumpkin*, No. 2:21-CV-00154, 2022 WL 4110926, at *8 (S.D. Tex. July 6, 2022) (recognizing interests of discipline and prevention of inappropriate sexual behavior),

Clemons' argument that BP-03.91's definition of sexually explicit images is flawed or incorrect is insufficient to state a valid claim for relief under the precedent above. The Court must defer to the judgment exercised by prison administrators when drafting a definition related to their legitimate penological goals. *See Overton*, 539 U.S. at 132 ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"). As multiple courts have held, an inmate's disagreement with prison administrators' judgment is insufficient to state a constitutional claim.[7] Here, Clemons fails to plead specific facts that could overcome this deference owed to TDCJ administrators. *See Beard v. Banks*, 548

---

*report and recommendation adopted,* 2022 WL 4110160 (S.D. Tex. Sept. 7, 2022); *McCullough v. O'Daniel*, No. 2:21-CV-00176, 2022 WL 3219802, at *7 (S.D. Tex. July 6, 2022) (recognizing interests of discipline and prevention of inappropriate sexual behavior), *report and recommendation adopted,* 2022 WL 3212933 (S.D. Tex. Aug. 8, 2022); *Ibenyenwa v. Texas Bd. of Crim. Just.*, No. 9:19CV1, 2022 WL 2815313, at *3 (E.D. Tex. Mar. 31, 2022) (recognizing interest of protecting female guards and preventing inappropriate sexual behavior), *report and recommendation adopted,* 2022 WL 2813720 (E.D. Tex. July 18, 2022).

[7]    *See Prison Legal News*, 683 F.3d at 216 ("It is, of course, extremely difficult for courts to judge whose assessment is more likely correct, which highlights the importance of the deference that is accorded to prison administrators applying reasonable policies"); *Stroble*, 538 F. App'x at 480 (prison authorities enjoy "a certain degree of discretion . . . to determine what constitutes impermissible sexually explicit material") (cleaned up) (citing *Thompson*, 985 F.2d at 207); *Teixeira v. O'Daniel*, No. A-22-CV-1155-RP, 2023 WL 3082350, at *4 (W.D. Tex. Apr. 25, 2023) (rejecting the plaintiff's claim that other inmates were allowed to receive "publications that contain substantially similar images" to the ones he was denied because "prison rules necessarily confer a certain degree of discretion on prison authorities to determine what constitutes impermissible sexually explicit material," quoting *Thompson*, 985 F.2d at 207); *Ibenyenwa*, 2022 WL 2815313, at *3 ("Plaintiff's disagreement with the prison's definition or determination of what is sexually explicit material is insufficient to establish that the regulation is not rationally related to a legitimate penological goal").

U.S. 521, 525 (2006) (plaintiff attacking a prison policy had "failed to set forth 'specific facts' that, in light of the deference that courts must show to the prison officials, could warrant a determination in his favor").

Additionally, although Clemons argues that the definition is unconstitutional because it bans materials that do not meet legal standards for obscenity, *see*, *e.g.*, Dkt. 17, at 12, the Fifth Circuit has explicitly rejected this argument. *See Thompson*, 985 F.2d at 205 (rejecting argument that "prison officials could ban only material that had been declared judicially obscene"); *Stroble*, 538 F. App'x at 480 (holding that "prison officials may limit prisoners' access to sexually explicit materials even if they are not obscene").

Clemons' challenge to BP-03.91 is foreclosed by Fifth Circuit precedent. Viewing all facts in the light most favorable to Clemons, the defendants' motion to dismiss will be granted.

### C. Fourteenth Amendment

Clemons brings a claim under the Due Process Clause of the Fourteenth Amendment, arguing that the defendants violated his due process rights when they confiscated his property, namely, 500 photos and three magazines that officials determined contained sexually explicit images. He points out that he acquired the property under prior regulations that permitted him to possess it and that the materials had been screened by TDCJ officials. The Court addresses his substantive and procedural due process claims.[8]

---

[8] Clemons states in his response that he does not bring a claim under the Equal Protection Clause (Dkt. 17, at 19).

### 1.     Substantive Due Process

A plaintiff bringing a substantive due process claim "must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest." *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993); *see Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government"). The Fifth Circuit has held that "only the most egregious official conduct is arbitrary in the constitutional sense." *Coleman v. Dretke*, 395 F.3d 216, 224 (5th Cir. 2004) (cleaned up). The "threshold issue" is whether the plaintiff has a protected property interest because, "[i]f there is no protected property interest, there is no process due." *Wigginton v. Jones,* 964 F.3d 329, 335 (5th Cir. 2020) (cleaned up).

Here, the parties dispute whether the confiscated property was contraband and thus whether Clemons had a protected interest in the property. *See Sullivan v. DeRamcy*, 460 F. App'x 374, 375 (5th Cir. 2012) (an inmate does not have a protected property interest in the possession of contraband). Clemons argues strenuously that the material was not contraband because he acquired and possessed it with the approval of TDCJ officials when previous versions of the policy were in effect. The Court will assume, for purposes of this opinion, that the confiscated property was not contraband.

Clemons alleges that the amended policy caused officials to "arbitrarily" seize his property (Dkt. 17, at 17). However, he clearly and repeatedly states that the confiscations were carried out pursuant to the amended policy. *See id.* at 14 (alleging that the amended policy transformed his previously received material into sexually explicit material); *id.* at

17 (stating that the confiscation was not "a random[,] unauthorized act by a State employee" but rather was "the result of . . . a newly amended State Prison policy"). A confiscation effected according to authority granted by a prison policy is not an arbitrary deprivation of property. *See DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (holding, in context of procedural due process claim, that conduct dictated by policy is not random or unauthorized); *Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (same). Clemons thus fails to adequately plead that the defendants' confiscation was arbitrary. Moreover, as held above in the context of Clemons' First Amendment claim, he has failed to adequately plead that the amended policy, and its definition of sexually explicit images, is not reasonably related to a legitimate governmental interest. *See Williams*, 6 F.3d at 294. Therefore, his claim that he was deprived of a protected property interest without due process must fail.

Clemons does not clearly articulate a liberty interest of which he was deprived. An inmate has a liberty interest in freedom from restraint that "imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life," or in those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To the extent Clemons bases his claim on his denied grievances about the confiscation, his claim fails because an inmate "does not have a federally protected interest in having [his] grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374. To the extent he bases his claim on his disciplinary conviction for possession of contraband, his only penalties, *i.e.*, the loss of recreation and commissary privileges for 10 days, do not implicate due process concerns. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)

(punishments such as commissary and cell restrictions are "merely changes in the conditions of [an inmate's] confinement" and do not implicate due process concerns). He therefore fails to state a claim based on a protected liberty interest.

### 2. Procedural Due Process

Clemons claims that the defendants violated his procedural due process rights when they confiscated his property and did not compensate him.

To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process. *See Parratt v. Taylor,* 451 U.S. 527, 537 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986). Procedural due process requirements for deprivations caused by state officials' authorized conduct are different from those caused by officials' unauthorized conduct. When a deprivation is authorized by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v. Burch,* 494 U.S. 113, 127-28 (1990); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007). However, when officials engage in random and unauthorized conduct depriving an inmate of property, the deprivation is not foreseeable by the State and pre-deprivation process is impractical. For unauthorized deprivations, therefore, the State can satisfy due-process requirements by making available a meaningful post-deprivation tort remedy. *Zinermon*, 494 U.S. at 128-29; *see Parratt*, 451 U.S. at 541; *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996). Texas provides a post-deprivation remedy for property loss. *See* TEX. GOV'T CODE §§ 501.007.

As above, the Court will assume for purposes of this opinion that Clemons had the right to possess the confiscated property, *i.e.*, that the property was not contraband.

Clemons alleges that the amended policy authorized the confiscation (Dkt. 17, at 17). For an authorized deprivation, Clemons was entitled to some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon,* 494 U.S. at 127-28; *Stotter*, 508 F.3d at 821-22. Clemons has submitted a "Disposition of Confiscated Offender Property" form that bears his signature dated November 4, 2021 (Dkt. 6, at 11-12 (Exhibit K)).[9] Above Clemons' signature, the form states, "If you disagree with the decision to confiscate these items, it is your responsibility to notify property staff of your intention to pursue the matter through offender grievance procedures" (Dkt. 6, at 11). This document, submitted by Clemons, demonstrates that he received actual notice of the confiscation.[10]

Additionally, Clemons' pleadings and filings demonstrate that he received an opportunity to be heard through his disciplinary hearing (Dkt. 6, at 13) and the administrative grievance process (Dkt. 21). Although Clemons did not prevail in his grievance or disciplinary case, these procedures satisfy the Due Process Clause. *See*

---

[9] The Court may consider this document because Clemons sufficiently references the document in his pleadings, *see* Dkt. 1, at 7 (citing Exhibit K), and because no party questions its authenticity. *See Walch*, 533 F.3d at 294.

[10] Although the defendants argue that BP-03.91 requires TDCJ to provide notice of the confiscation and an opportunity to be heard, none of the cited policy provisions apply to this precise situation, *i.e*, confiscation of materials already delivered to, and possessed by, the inmate. Rather, the cited provisions apply to officials' review and rejection of certain incoming or outgoing mail. *See* Dkt. 11, at 8 (citing § IV.D, which pertains to notice to an inmate of the mailroom's decision to reject correspondence; § IV.F, which pertains to notice to an inmate if incoming material requires further review; and, § V.B, which pertains to notice to an inmate after an appellate decision regarding denied correspondence).

*Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014) (due process requirements were satisfied because the inmate was able to make his claims through the grievance process and officials responded with a written justification for their denial of relief); *Geiger*, 404 F.3d at 374 (inmate does not have protected interest in having grievances resolved to his satisfaction); *Evans v. Baker*, 442 F. App'x 108, 110 (5th Cir. 2011) (inmate "received the due process protections required when he received notice of the basis for the confiscation of the subject property and a fair opportunity to rebut the allegations concerning his ownership of the property at the [disciplinary] hearing and in his grievances").

Finally, Clemons argues that his due process rights were violated because he was never compensated for property he obtained in compliance with past rules (Dkt. 17, at 15) (citing *Hudson*, 468 U.S. at 533; *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988)). However, the legal authority cited by Clemons pertains to an official's *unauthorized* deprivation of an inmate's property. As stated above, Clemons clearly alleges that the confiscation of his property was authorized by BP-03.91. Moreover, even assuming that the deprivation was unauthorized, his remedy for the unauthorized withdrawal arises under state law, not under the federal Due Process Clause. *See Zinermon*, 494 U.S. at 128-29; TEX. GOV'T CODE §§ 501.007 (inmate claims for lost or damaged property). Therefore, to the extent Clemons pleads any unauthorized deprivation of property, he fails to state a due process claim.

### D.     Other Motions

Clemons has filed a motion for leave to amend his complaint (Dkt. 18). He seeks to add the Directors' Review Committee as a defendant and bring a claim pertaining to

events on November 9, 2022, when mailroom officials denied delivery of four photos to Clemons on the basis that they contained sexually explicit images. These events occurred after Clemons filed this lawsuit on December 8, 2021.

When a plaintiff seeks to supplement the pleadings and bring a claim based on events that happened "after the date of the pleading to be supplemented," the request is governed by Federal Rule of Civil Procedure 15(d). *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012). Whereas Rule 15(a) provides that leave to amend should be "freely given," the text of Rule 15(d) contains no such provision regarding supplemental pleadings. *Burns v. Exxon*, 158 F.3d 336, 343 (5th Cir. 1998). Nevertheless, "the discretion exercised in deciding whether to grant leave to amend is similar to that for leave to file a supplemental pleading." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983) (citing 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1504 (1971)); *see Lowrey v. Beach*, 708 F. App'x 194, 195 (5th Cir. 2018).

Here, the incident underlying the proposed supplement occurred approximately one year after the confiscation on November 4, 2021, which is the basis for Clemons' original claims in this suit. Whereas Clemons' original claims pertained to a confiscation, the proposed supplement involves denied incoming correspondence, and apparently involves different provisions in BP-03.91. Moreover, Clemons seeks to bring the claims against the Directors' Review Committee, an entity that is not a defendant in this action. For all of these reasons, the Court in its discretion will deny Clemons' motion to amend. *See Burns*, 158 F.3d at 343; *Lowrey*, 708 F. App'x at 195. Clemons may, if appropriate, file a separate action regarding the incident in November 2022.

Clemons' motion to dismiss Warden Moore in his individual capacity (Dkt. 19) will be granted.

## IV.   CONCLUSION

For the reasons stated above the Court now **ORDERS** as follows:

1. The defendants' motion to dismiss (Dkt. 11) is **GRANTED**. All of Clemons' claims are **DISMISSED with prejudice**.

2. Clemons' motion to amend his complaint (Dkt. 18) is **DENIED**.

3. Clemons' motion to dismiss (Dkt. 19) is **GRANTED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on July 27, 2023.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE